Good morning, Your Honor. My name is Malcolm Cainburg. I'm a Deputy City Attorney with the City of San Jose, representing the defendants in this case in an appellant on the issues involved. This is a police shooting case, and it involves important issues of qualified immunity. The ultimate primary issue is what does the trial court do, or what should a trial court do, when there are material disputed facts regarding the qualified immunity issue? Let me put that issue in perspective with the facts, if I may. On January 3rd, 2014, Officer Donny West shot plaintiff Hunt Latham after a report to the police of an incident with a man with a knife. As the court knows, there are essentially two distinct scenarios. The police officers explained and testified that upon arrival, Mr. Lam moved some. He moved to the driveway, and then down the driveway and ultimately moved toward Officer West in an unusual manner, admittedly, but toward Officer West with a knife in his hand. She retreated about 20 feet, issuing commands to stop and drop the knife, and when he got to about 10 feet away from her, she backed up into an impediment, felt that she couldn't move any further, and when he still continued toward her, she shot him. As the court also knows, there was a witness, and the witness has a completely different explanation, recollection of the event, and that was that when the officer got to the property line, issued a couple of commands, plaintiff Lam turned around to face away from the officer, made some motions with his hand and the knife toward his stomach, and the officer shot him in the back for essentially no reason. He was not threatening her. He was not facing her. He was not saying anything. He was not coming toward her. So those are the two. I hope that you're not going to go too far into this, because the bottom line is your questions are about special interrogatories. Okay, so let's just go to special interrogatories. Is there a case which says that the refusals give the special interrogatories an abuse of discretion? Neither did I. That's why I didn't know why you would say that it was an abuse. Well, let's talk about that. I mean, the bottom line is, what is abuse, we know. That's correct. And my position is that in a case like this, where you have one scenario, where we've had all kinds of cases where we have one scenario and another scenario, and we've never said any place that the court has to give special interrogatories. Well, that's my position that the court does, in a case like this. I didn't decide any case. Well. But you're just arguing it. Let me ask you this. Let me change it just a little bit. Did you preserve this? Yes. What about filing a 50A motion? Did you file one? No. File a 50B motion. No. Then how do you preserve qualified immunity? Well, given tort two versus Las Vegas. Given tort two. First of all, tort two was a somewhat complicated case. Well, I was there. I know how complicated it was. Okay. But the district court never ruled on the immunity defense. And therefore, we said, having not filed those motions, the district court would be affirmed. Well, let me tell you the difference. First of all, filing a Rule 50A motion in a situation where there were material disputed facts would not have accomplished anything. Well, just a minute. The bottom line is that you file a motion to begin with, and yes, you can check qualified immunity up front. You don't have any way, really, to win on qualified immunity here up front because we're going to take the plaintiff's facts. Correct. So then you come to the 50A motion. It kind of leads in the same result. Correct. But once you get to the 50B motion, which is the reason you wouldn't even do it, in order to preserve it, you've got to file a 50B motion at that point. The court may be convinced you would still, in a 50B motion, you don't have 50B. At 50B, you would have the chance for the court to think about the case anew. Not with respect to all of those facts. But if all of those facts are what you're saying is our idea in Tort 2 is wrong, you don't have to file a 50B motion. If that's what you say Tort 2 stands for, then I would say, correct, it's wrong because you cannot resolve this issue on a 50A or a 50B motion. And so in this context, what I did was ask for interrogatories to then allow a 50A or a 50B or both, 50A as a trial, on the facts that it's sure you could have found and say, ah, you're under, we have facts now. But just a minute, it seems to me that if you really do look at this under the second prong of the test, of what the jury finds as to facts, it's going to have some help, but you may be able to determine this yourself as the district court. Why not make the 50B motion? It would have been futile, Your Honor. Okay. I understand your question. It certainly would have been futile. Tort 2 did not involve what we're dealing with here, which was an inquisition of whether to, if being wrong in Tort is the only way not to challenge the court's decision not to do that, it was a motion for new trial, there was no other way to challenge that, Your Honor. All right. Okay. Now, let me ask this question as an outsider. Yes, Judge. You know, not bound by what the Ninth Circuit has said, has the Ninth Circuit ever said that under a case like this, that you have to file a 50A or 50B motion, or you're precluded from asking for interrogators? The Ninth Circuit's plaintiff interprets Tort 2, and I think the AD case interprets Tort 2 to say that I disagree in this context. In this context, I ask the court to do something which I feel under the case law is required. And if I may stop and step back and just talk about that for a moment, there are, you know, there are dozens of cases which say, how do we deal with this dilemma? And there are other circuits that have said, this is what you should do, this is what is done, but has anybody in the Supreme Court ever said that you must submit interrogatories in a situation like this? According to Schwartz, who wrote the treatise on this, the Supreme Court has not ruled on this issue at all. It has engendered confusion among the circuits, and it hasn't been determined yet. But I will say that in looking at the Ninth Circuit law, the fragility of cases which tangentially address this issue, they all said it's not an abuse of discretion, but they had a reason for it. Because it made no difference, because the facts that once the jury made its determination, you didn't need to know what the facts were, because you could determine from that jury determination that qualified immunity doesn't apply. In this case, it's not like this. Jury has started to unqualify immunity. No. And I, you know, and that's... Did you ask for the jury to reach out? Of course not, Your Honor. I believe in the case law, although it may be somewhat, you know, back and forth money, the prevailing view is now, of course, that issue doesn't go to a jury. It's up to the jury to decide what the law is, or what the established law is. So no. So your argument is the jury couldn't do that? Well, the jury's role is to determine what the facts are. Correct. And I think this is all supported by Liz Muntz's case from the Ninth Circuit, the San Diego case. In that San Diego case, which was a summary judgment case, the court looked at the facts. It was a guy, you know, it was a guy kneeling with two knives in his pockets, and there was some dispute among the officers about whether he had actually pulled the knives. And the court said, look, under those facts, most favorable to plaintiff, a jury couldn't find a fourth inmate with the others. They might find that this wasn't a threat. They might find that the officer didn't, you know, he couldn't see where the other officers were. So, you know, I'm not going to grant you a motion for summary judgment on that. However, and this is the important thing, even in a situation where the facts could be interpreted to show a violation of the Fourth Amendment, the court, of course, has to go further. And, you know, we've been having qualified immunity cases over and over, and the Supreme Court keeps telling the Ninth Circuit to, you know, look with more specificity than they do. They call it a – The bottom line of that case is that there's no case law that would explain that the actions – that you have to wait for the guy to pull out the knife. The case law – in fact, the consensus of case law is that when he reaches for the knife, you can use excessive, you can use deadly force. So the point is, this case is very similar to that in that the officer's scenario is subject to dispute. So in terms of whether a Fourth Amendment violation took place, could the officer have done something different? Was there an alternative? Could the officer have run away? Was the guy coming at her fast enough to cause her to have a fear? And even with – even with – also immunity applies. In a meeting that – I'm sorry to interrupt. We've never gotten this officer the ability to have it litigated on whether she's in trouble. My question is – I'm sorry to interrupt. No, I'm saying – I thought there was pause in what you were saying. I was trying to get it there. But when did you last preserve this? What stage in the proceeding was it in which you asked those special interrogatories? At the jury charging conference. Ah. And in fact, I was the trial judge. And I said, okay, I agree with you. How would this work? How would this work? Would I give the entire charge to the jury in this case and say, before you move to the question of liability or damages, you need to come back and answer this question on qualified immunity? Or would I submit that question immediately and say, ladies and gentlemen of the jury, we're not at the point where you're going to decide this case. We're at the point where you're going to decide some factual issues, which we think is important for this case going forward. I'm not sure of the answer to that. I'm not sure if it could happen after the instructions or before you even get to those. I think all of that goes into our determination as to whether or not the district court abuses discretion in doing something that appears even under Rule 49. And that's where this comes from. Rule 49, the Rules of Procedure, correct? That's right. And they don't even call it special interrogators. They call it special verdicts. And it may have been a verdict. And this is something so unusual, I guess, that it might be the right way to do it. But how do you say it's an abuse of discretion? I say it's an abuse of discretion because otherwise the officer loses her right to litigation of her indeed. It's qualified immunity on real terms. I understand your argument, but that's why I hit you so hard on 15A and 15B. You suggested it made no difference, but there are a lot of objections counsel makes during trial to preserve the objection on appeal, to preserve the right to bring the argument you're about to make on appeal, and you make the objections even when you're going to lose. And no objection was made here. You said that? No, no. There was no 15A motion. There was no 15B motion. And it seems to me, based on our precedent, if one had wanted to preserve what argument you're making, one would have made those motions. Only if those motions were made after the jury made its actual determination. Those motions, either one of them or both of them, are completely different. I understand what you're saying. I hear what you're saying about futility, but I know what I've done on any number of occasions standing in your same place, having the district court say, you're not letting that evidence, I'm not letting that evidence in, and I made few objections nonetheless because I wanted to preserve appeal. And if I looked into our two, I don't know how I could have, in this case, not made a 15A and B if I wanted to preserve my right to argue what you're arguing. Because the 15A and 15B could only be heard after the facts were determined. The only way to deal with this issue was through interrogation. The 15A and 15B are not given to the jury. The 15A is given to the judge, and the judge can make that determination. But you didn't even ask. But if I asked the judge, can I argue? Can we bargain enough about this? Okay. Thank you. Thank you. Thank you. Good morning. And this is a bill for the plaintiff, Anna Curry. May it please the court. I think the court obviously has hit on the threshold issue in this case. That is, is qualified immunity preserved at all? No 15A motion was made. No 15B motion was made. That's the end of the story with respect to qualified immunity. This is a case where the defense counsel is required under the Ninth Circuit precedent to make those motions, and you make the effort, even if you know that you won't win it, you still make the effort to preserve the record for appeal. That's what you did. In the same way, by the same token, if the special interrogatories are that critical, it seems to me that it is also incumbent upon the lawyer to make the effort to persuade the judge by submitting some examples of the special interrogatories that you would want to have answered. That's never happened. We haven't even had an example of what one of those special interrogatories might look like. It just hasn't happened. Well, the problem that I have with this case, I will just lay out for you. It seems to me like the jury's verdict disagrees with itself on two issues. If I had had qualified immunity in front of me, the counsel should have raised it or could have raised it. I may say, based on the case law, given that there was no battery, that in fact the second prong of the analysis cannot be met. What do I do with this? The first point is that the qualified immunity issue is not legitimately before the court. It has been waived. It has not been preserved. So you don't get there. But I would actually take issue with that because what I would do is I would look at the jury instructions between the Ninth Circuit jury instruction and the California state law battery instruction. I would put them side by side. And I would look at it to see is there a conflict not in the law, because the jury doesn't give the law the treaties to say that these are the same. What the jury gets are the actual instructions, and those instructions are actually different. And so it may be that everyone believes that they are the same, but in reality the instructions are different. So if it is a matter of whether they believe I get no presidents to do the thing, they are really indifferent. But you can read the jury instructions and you can point to the differences in the jury instructions, How could this jury verdict not differentiate with its own verdict, given the verdicts given? It would be a scenario. Absolutely. And therefore, the second prong is well satisfied. So here's the looking at the Ninth Circuit instruction, and the availability of less intrusive alternatives. One of those is redeploying your location. Now we saw the scenario of Scenario A and Scenario B, and obviously Scenario A is where Officer West is at the bush, stuck in the bush as she described, totally inconsistent with the showcasing evidence. Their own expert agrees with that. Our expert says virtually impossible. Their expert says highly unlikely. But the Scenario B is where the showcasing evidence actually places her, and of course that's evidence. The evidence places her at Scenario B. And what you can find there, when you submit your feet in place as the California jury instruction does, that that effectively does what she says she did when she stepped from the bush. She couldn't move. And so when a person is closer to a man with a knife who is disturbed, there's obviously a potentially greater danger based on the officer's mistake that he was dangerous. And so I think that that alone accounts for the difference. The jury instruction says retreat is not an option. I know defense counsel made reference to the jury instruction macro. Let's say in the course of effecting an arrest, well, I don't think that's material here. She has her gun drawn on him. That's obviously what she's intending to do. But it says it takes away that option of redeploying. Defense counsel cited the law saying that redeployment or retreat is not an option under federal law either. The law doesn't say that in any way. The law says under those circumstances, which are a person who is in a drainage ditch, an officer's in a drainage ditch with a man who's lifting a rock over his head, coming at them, a man who's next to the freeway, a man who's been driving in a very dangerous way and going to traffic. It says under those circumstances, retreat was not a reasonable option. Well, in this case, there's no freeway. There's no real traffic. He's in his neighborhood. He's in his yard. And he hasn't been dangerous to anyone. And that's obvious. We have that from Mrs. Jefferson's testimony. So we're saying in this case it is appropriate. Our police practice expert testified to that. I didn't even call the redeployment. I didn't even call the retreat. But there is no case law that says that you should not redeploy, and the availability of less dangerous alternatives is critical this year. All right. Okay. I asked you about the Tortu case. This case is a little different posture than Tortu. It's a different posture because our judge denied the Rule 59 motion. Our judge didn't overturn the verdict. So it is a different posture. And it might have been set prior to that. I mean, they asked, they filed a Rule 59 motion for a new trial. And they were saying, well, the reasons that we should be given a new trial is the court abused discretion in not submitting special interrogatories. Does this put us in a slightly different posture than Tortu? I think it does. In my case, with respect to the issue of special interrogatories, I think what Tortu answers is, in this case, the court declined special interrogatories. And if you go to the point of special interrogatories, it is to explain issues in jury instructions that may not be clear. If the jury instructions are clear, and the ground for an uncertain instruction is very clear standard instruction, then you certainly don't need special interrogatories. With respect to Tortu, going to the special instructions there, I think the key point is the court found that the jury, that there were different uses of force in that case. And so, in terms of what could have constituted the excessive force, was that issue. I guess my point is, as I specifically said, that the only way to address the question of qualified immunity in a case like this is to file a Rule 58 and 50B motion. Yes, absolutely. Tortu says that. And cases have held beyond that, that is the case. The reason being is that, for the first prong, it's the fact question. The jury finds the fact of the constitutional violation. The second prong is the legal question. Was it clearly established that the officer had violated the Constitution? And on that point, that's why you make a motion. That's why you make a motion. It's a legal determination. You're asking for motion for judgment as a matter of law. And you're renewing that motion at the end of the case. I mean, there's no question about it. It's the truth that it's standard. It wasn't done in this case. And the other point I want to make to the special interrogatory issue is really a subsidiary component of the qualified immunity argument. So, qualified immunity is not an issue. We have the early special interrogatories. So, provided that it is waived. I didn't quite understand that. Say that again. Provided that the qualified immunity argument is waived, the special interrogatory argument is likewise gone. Because it is a subsidiary component, it's only relevant to that point. Let's suppose here that the city had filed a 50-A motion. Well, did it at the appropriate time? Okay. Could the court have given a rule on the 50-A motion since factual determination had not been decided? The court could have ruled that it was taken under advisement. You could have what? I didn't. You could have what? To subject it to a Rule 50-B motion after it had been a case and then to preserve the matter for appeal, or to preserve the issue for appeal. And as indicated, you make all kinds of objections, knowing you will lose them in order to preserve the matter. It's just a matter of fundamental practice. Now, another point in Part 2, obviously from a reading of court's dissent in that case, the denial of the Rule 59 is sound. It is not subject, really, and this needs to be overturned at all or questioned. The trial court had the opportunity to assess and evaluate the credibility of the witnesses. The trial court was able to see the color that Officer Phelan turned when he was impeached as badly as he was. The trial court recognized what happened when Officer West, likewise, was badly impeached. One of the issues here, and I argued with respect to the defendants' arguments on the closing argument point, I argued countless times and actually listed it out. I can cite to you the locations where I pointed out the difference between the negligence law and the Fourth Amendment claim. We are not bringing provocation here. This is not Mendes at all. This is not a case where the jury could have been infused with the pursuiting tactics or the basis for the violation. We explicitly argued otherwise. You can look at the serial excerpt of your record, 1460-69, 1480-82, 1487-89. You can look at 1464-65. It's there throughout. What I did say, though, is that the jury could determine and assess these statements regarding the preceding conduct to assess the officer's credibility with respect to her claim that she was stuck at the bush. I did say that, and that is true. Because if she was dishonest about those prior statements, then certainly that could be used to assess her credibility about being stuck at the bush. The showcasing students supported it. Both experts agreed that Sorey was thinking like an officer failing a trial where at the bush he put earlier his low shooting energy. He was so far away from the bush when she fired that he didn't even remember the tree being there, and the bush was right around the tree. So this was, frankly, a very strong verdict. And I think the battery is a function of the actual wording of the jury instructions themselves. That's what's there to me. Now, another point. The defendants have argued and tried to analogize Rule 51 to Rule 50. That is obviously inappropriate. Rule 50 has strict guidelines, strict requirements. Rule 51, and did you look at Franklin? Did you look at Franklin? That was disputed over jury instructions governed by Rule 51. This is not that. This is a question. At what point in time do you forfeit your Rule 50? At what point in time does that happen? You should have it filed by the closest evidence, but certainly the only exception here is that it can be somewhat summed at a point in time when the jury gets the case. But if it's not filed by then, you've lost it. You can't file it. That's what happened in this case. For all the excuses that they made, there are two points. They never filed them. They never gave an actual example of the special interrogatories, and they never actually followed through and did a Rule 50. So there's no follow-through on either of those. So that's something to you. This is more data after the fact as the jury verdict, trying to find a way out. I hate to say that with respect to the Ninth Circuit, they had rarely gone to standard. But is there an argument to be made here that the jury actually found, against the question of qualifying immunity, when they found the Fourth Amendment violation? I think so, because I think the issue is that I told the attorney that if she's after Bush and he's coming at her with a knife that she claimed would lose the Fourth Amendment claim, and you only have negligence liability then, then you would lose the Fourth Amendment claim. But if it is scenario B, where she's not stuck at the Bush, where she herself has run up on him, there's not going to be negligence. I think this is how it gets explained in some respects, but it's also just a basic excessive force case at that point. If that is the case, then we win. We win the Fourth Amendment claim. And if you go through with my basic argument, it's perhaps my fault, and perhaps they addressed the state law battery disruption, and maybe by then we would have had a different result. I don't know the answer to that. But the judge looked at all this in his Rule 59, and he disclosed all of it, and being the person closest in proximity to the issues, found that there was no reason to overturn the verdict. One last point I want to make. What is the standard of review? Is it de novo or abuse of discretion? Equalified immunity points really go to issues of fact. There's work that's in the closest proximity to the issues of fact. That's why, especially for interrogatories, and whether to get them are subject to abuse of discretion standard because they're factual to the case. Thank you. Thank you. Okay. I come back to the issue that haunted us in this trial, and that is how to deal with this factual dispute. I think the district courts deserve an explanation of how to do it. The officer deserves an explanation, and, in fact, the officer really deserves an evaluation of her conduct as determined by the jury. Evaluated by the judge to determine whether or not the immunity could be applied, and that is what she lost in this case, and that's the legal issue. I don't believe Part 2 applies to this. I believe it's distinguishable, and one question that the court asked about the battery were if there is no battery, the jury could not have found that there was no threat. If there was no threat, if whatever happened in this scenario did not result in a threat to the officer, you would have to have a battery. You would have to out-suit someone for no threat. They were inconsistent. I understand that the court has a different way of looking at inconsistent. I've spoken for the general, but that's not what I'm talking about. What I'm talking about is how do you evaluate the verdicts the jury found when you had those two verdicts, and the only way to do that, the only way to even come close to getting those verdicts consistent is to believe that the jury found that the man was a threat, he was a threat, but that the officer should have done something else, and that brings us right into qualified immunity because there's no case law that says in a scenario like this where the man is a threat to the officer, she doesn't have the right to use deadly force. I understand your argument. Thank you. Thank you very much. Case 1616052, Lamb v. Saddles A, is the inferior jury.
judges: Fisher, Schroeder, N.R. Smith